UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEVEN NOWICKI,

                           Petitioner,

         -against-

ROBERT F. CUNNINGHAM, Superintendent,
Woodbourne Correctional Facility[1],

                       Respondent.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

09 Civ. 8476 (KMK) (GAY)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

      Petitioner Steven Nowicki ("Nowicki" or "petitioner"), by and through counsel, has

filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth

below, I respectfully recommend that the Court deny the petition in its entirety.

## I.  BACKGROUND

      On August 26, 1999, petitioner was indicted in Westchester County on charges

of sodomy in the first degree (four counts), sexual abuse in the first degree (sixteen

counts), endangering the welfare of a child (two counts), and criminal possession of

gambling records (one count). (Aff. in Opp'n to Pet. for Writ of Habeas Corpus at 9.)[2]

These charges stem from Nowicki's sexual assaults on G.L. and C.L. following a New

---

[1] The Court has substituted the current Superintendent of Woodbourne Correctional Facility into
the caption.

[2] Hereinafter Aff. in Opp'n

Year's Eve party at the victims' house.[3] (Id. at 3.) On October 8, 2000, petitioner was

convicted on all counts of the indictment except for the gambling charge.[4] (Id. at 25.)

Following conviction, Nowicki was sentenced to sixteen years for each count of sodomy,

five years for each count of sexual abuse, and one year for each count of endangering

the welfare of a child. (Id.) The court also imposed five years of post-release

supervision. (Id.)

Petitioner timely appealed the judgment of conviction to the Appellate Division,

Second Department. (Id. at 26.) In his appeal, petitioner claimed that he received

ineffective assistance of trial counsel. This claim was predicated on the defense's failure

to object to: (1) the admission of the victims' prior consistent statements; (2) expert

testimony that petitioner's DNA was found on one of the victims; (3) questions

concerning petitioner's post Miranda silence; (4) the opinion testimony of party guests;

and (5) the trial judge's intoxication instruction. (Pet'r's App. Submitted in Conjunction

with 28 U.S.C. § 2254 Application at 557-58.)[5] Nowicki also argued that his attorney's

decisions to elicit testimony of the victims' prior consistent statements and concede the

presence of saliva on one of the boys was ineffective assistance. (Id.) On March 11,

2008, the Second Department unanimously affirmed petitioner's conviction. See People

v. Nowicki, 852 N.Y.S.2d 783 (N.Y. App. Div. 2008). The New York Court of Appeals

---

[3] The Court notes that both parties failed to comply with Fed. R. Civ. P. 5.2's prohibition against using a minor's name in a filing.

[4] Prior to trial the Supreme Court, Westchester County (Smith, J.) dismissed the gambling count. (Aff. in Opp'n at 14.)

[5] Hereinafter App.

denied Nowicki leave to appeal on July 8, 2008. See People v. Nowicki, 893 N.E.2d 452 (N.Y. 2008).

While his direct appeal was pending, Nowicki filed two N.Y. C.P.L. § 440.10 motions. The first § 440.10 motion sought, in part, to vacate petitioner's conviction on the basis of ineffective assistance of counsel. (App. at 5.) The crux of this claim was that the defense failed to: (1) adequately attack the prosecution's DNA evidence; (2) object to a litany of improper testimony; (3) sufficiently challenge the admissibility and characterization of petitioner's statements to authorities; (4) protect Nowicki's character; (5) object to speedy trial violations; (6) request a change of venue; (7) challenge and preserve purported Rosario violations; (8) deliver an effective summation; and (9) request certain jury instructions. (Id. at 58-98.) By Decision and Order dated December 2, 2002, the Supreme Court, Westchester County (Smith, J.) dismissed petitioner's motion on the merits. (Id. at 235.) On March 27, 2003, the Second Department denied Nowicki leave to appeal the Supreme Court's decision. (Id. at 324.)

On March 23, 2005, petitioner filed his second § 440.10 motion. (Id. at 326.) This motion sought to vacate petitioner's conviction based on his attorney's ineffective assistance of counsel. Nowicki's claim centered around counsel's failure to request funds for or appointment of a DNA expert. (Id. at 364.) Petitioner also posited that the defense inadequately challenged the admissibility and weight of the DNA evidence. (Id. at 373.) By Decision and Order dated November 28, 2005, the Supreme Court, Westchester County (DiBella, J.) dismissed petitioner's second § 440.10 motion. (Id. at 514.) On January 25, 2006, the Second Department denied Nowicki leave to appeal the Supreme Court's dismissal. (Aff. in Opp'n at 32.)

3

On October 6, 2009, Nowicki timely filed the instant petition for a writ of habeas corpus. Petitioner seeks relief on the grounds that his trial counsel's performance was constitutionally ineffective. This claim is predicated on his attorney's failure to object to: (1) jury instructions on the "affirmative defense of intoxication"; (2) inadmissible testimony; (3) the admission of the DNA evidence. Nowicki also argues that his counsel should have attacked the prosecution experts' characterization of the DNA evidence.

## II.  STANDARD OF REVIEW

Review of petitioner's ineffective assistance of counsel claim is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a deferential standard of review on federal courts considering habeas corpus claims that were previously adjudicated on the merits in state court. Pursuant to the statute a federal court may only vacate a state conviction if it was either: (1)"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Since the petitioner does not assert that his conviction was based on an unreasonable determination of the facts, I need only consider the provisions of § 2254(d)(1). (See Pet. for a Writ of Habeas Corpus at 19.[6]) Under § 2254(d)(1) a state court's decision is "contrary to" clearly established federal law if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United

───────────────

[6] Hereinafter Pet.

States] on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000).

As to the "unreasonable application" prong of § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411. A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) "the state court identifies the correct governing legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id</u>. at 407.

## III. DISCUSSION

<u>A. Ineffective Assistance Of Counsel Standard</u>

Ineffective assistance of counsel claims are analyzed under the rubric established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Hemstreet v. Greiner</u>, 491 F.3d 84, 89 (2d Cir. 2007). <u>Strickland</u> created a two-part test that assesses: (1) whether counsel's performance was deficient; and (2) if prejudice resulted from the attorney's deficient performance. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Harrington v. Richter</u>, 131 S. Ct. 770, 787 (2011); <u>Gueits v. Kirkpatrick</u>, 612 F.3d 118, 122 (2d Cir.

2010). In order to satisfy the deficiency prong, petitioner must prove that, "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The crux of the inquiry is whether the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. In conducting its analysis, the Court "must make every effort . . . to eliminate the distorting effects of hindsight, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Bell v. Miller, 500 F.3d 149, 156 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 689).

Strickland's prejudice prong requires the petitioner demonstrate, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is defined as a, "probability sufficient to undermine confidence in the outcome." Id.

When the "highly deferential" standards created by Strickland and § 2254 act in tandem, habeas review is "doubly" deferential. Harrington, 131 S. Ct. at 788. The Supreme Court has explained that in the context of habeas review, "the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009)(quotation marks omitted). Thus, a state court's adjudication of an ineffective assistance of counsel claim is entitled to "substantial deference." Rosario v. Ercole, 601

6

F.3d 118, 123 (2d Cir. 2010). As will be set forth in greater detail below, petitioner has failed to prove that the state courts' dismissals of his ineffective assistance of counsel claims were unreasonable.

B. Failure To Object To Jury Instructions

In the charge to the jury and again during deliberations, the trial court instructed the jurors on the legal effect of a defendant's intoxication. (Trial Tr. at 3361, 3506.)[7] Petitioner claims that these instructions were improper because he never raised the "affirmative defense of intoxication." (Pet. at 26.) According to Nowicki, a corollary of the judge's instructions was that the defense assumed the burden of proof on an issue it never raised. (Id.) As such, his attorney was ineffective for failing to object to the intoxication instruction. (Id. at 28-29.)

Nowicki's argument fails, in part, because it misinterprets New York law. Petitioner is correct that the defendant assumes the burden of proving an affirmative defense. See N.Y. PENAL LAW § 25.00(2). However, intoxication is not an affirmative defense under New York law. See id. (affirmative defenses are specifically designated by statute); N.Y. PENAL LAW § 15.25 (intoxication is not statutorily designated as an affirmative defense). Intoxication is not even a defense to criminal charges in New York. See id. ("Intoxication is not, as such, a defense to a criminal charge...."); People v. Sotomayer, 569 N.Y.S.2d 973, 978 (N.Y. App. Div. 1991)("Intoxication is not a defense to a criminal charge...."). Additionally the judge's actual instructions did not require Nowicki to prove his intoxication. (See, e.g., 3511.) Since intoxication is not a burden

---

[7] Hereinafter Tr.

shifting defense and the judge did not instruct the jury to the contrary, petitioner's whole claim rests on a faulty premise.

Moreover, the failure to object to jury instructions only constitutes ineffective assistance of counsel when "the trial court's instruction[s] contained clear and previously identified errors." Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001)(internal quotations omitted). State law dictates whether the trial court's jury instructions were legally correct. Love v. Smith, No. CV-08-3746, 2009 WL 2422384, at *5 (E.D.N.Y. Aug. 6, 2009). See Aparicio, 269 F.3d at 99-100. In New York, an intoxication instruction is proper where "there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis." People v. Perry, 462 N.E.2d 143 (N.Y. 1984). Sufficient evidence of intoxication includes, "evidence of recent use of intoxicants of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent." People v. Rodriguez, 564 N.E.2d 658, 659 (N.Y. 1990).

In this case, the record is replete with testimony that the defendant consumed alcoholic beverages on the night of the assault. (Tr. at 2688, 2848, 2863, 2874, 2977-78.) Given this evidence, the trial judge's instructions on the legal effect of intoxication were proper under New York law. See Perry, 462 N.E.2d at 143. Therefore, defense counsel's failure to object to instructions that were not clearly erroneous was not ineffective. See Aparicio, 269 F.3d at 99. In light of New York's law on intoxication, it was not unreasonable for the Second Department to reject petitioner's claim that his counsel was ineffective for failing to object to the judge's instruction.

C. Failure To Object To Inadmissible Testimony

Petitioner claims that his attorney's failure to object to a plethora of inadmissible testimony was ineffective assistance of counsel. The challenged testimony involved: (1) petitioner's post-Miranda silence; (2) the victims' accounts of the assaults; and (3) the New Year's Eve party guests. I will consider each of these claims below.

I. Testimony On Petitioner's Post-Miranda Silence

Nowicki alleges that the prosecution violated "the principles announced" in Doyle v. Ohio, 426 U.S. 610 (1976), and contravened New York law by introducing evidence of his post-Miranda "silence." (Pet. at 34.) Two of these purported violations occurred during the prosecution's direct examination of detectives Ellman and White. Specifically, during these colloquies the prosecutor questioned the detectives about petitioner's failure to offer exculpatory statements during his interviews. (Id. at 31-2.) According to Nowicki, the other violation transpired when the prosecution cross-examined him about "statements he had not made to the police." (Id. at 32-3.)

In Doyle, the Supreme Court held that impeaching a defendant with their post-Miranda silence violated the Due Process Clause of the Fourteenth Amendment. See Doyle, 426 U.S. at 619; Anderson v. Charles, 447 U.S. 404, 407 (1980). Doyle rested on the assumption that Miranda warnings implicitly assured a defendant that their silence carried no penalty. Doyle, 426 U.S. at 618. Given this assurance, the Supreme Court concluded that it was fundamentally unfair to allow the government to comment on the silence that it induced. Id.; Wainwright v. Greenfield, 474 U.S. 284, 289-90 (1986). For similar reasons, Doyle's progeny also prohibit the prosecution, in its case in chief, from offering the defendant's post-Miranda silence as evidence of guilt. See

9

Wainwright, 474 U.S. at 292, 295; Bradley v. Meachum, 918 F.2d 338, 341-42 (2d Cir. 1990); United States v. Szymaniak, 934 F.2d 434, 439 (2d Cir. 1991).

However, Doyle does not protect a defendant's post-Miranda waiver silence. See Anderson, 447 U.S. at 408 ("[a] defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent."); Bradley, 918 F.2d at 342-43; United States v. Pitre, 960 F.2d 1112, 1125 (2d Cir. 1992). Therefore, the threshold question in any Doyle claim is whether the petitioner waived and subsequently failed to reassert their right to remain silent. See id. at 1125-26; Bradley, 918 F.2d at 342.

In two of the challenged colloquies, the prosecutor questioned the detectives about interviews with Nowicki that occurred after he had waived his Miranda rights. (Tr. at 2528, 2550, 2684, 2935-41.) Since petitioner waived and never reasserted his Miranda rights, the prosecution did not contravene Doyle by inquiring into Nowicki's failure to offer exculpatory statements during his interviews with the detectives. See Pitre, 960 F.2d at 1125; Bradley, 918 F.2d at 342-43. Similarly, the prosecutor's cross-examination of Nowicki did not violate Doyle because the challenged questions involved the period after petitioner waived his right to remain silent. See United States v. Genao, 361 F. Supp. 2d 224, 228 (S.D.N.Y. 2005). The defense's failure to raise a meritless Doyle claim was not ineffective assistance of counsel. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999). Therefore, the state court's determination that trial counsel was not ineffective for failing to object to the prosecution's purported Doyle violations was not unreasonable.

Assuming the prosecutor's questions contravened New York law, petitioner still cannot establish a Strickland claim because of the absence of prejudice. See Strickland,

466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.") But see, People v. Savage, 409 N.E.2d 858, 861 (N.Y. 1980); People v. Prashad, 848 N.Y.S.2d 279, 280 (N.Y. App. Div. 2007)(Where "defendant speaks to the police and omits exculpatory information which he presents for the first time at trial, the defendant may be impeached with the omission.").

The record reveals that petitioner was found asleep on the floor of the victims' room after the assaults. (Tr. at 1049-51, 2875-78.) The victims also identified Nowicki as their assailant. (Tr. at 1518-19, 1646, 1774-77, 1862.) Moreover, during questioning petitioner made highly inculpatory statements to detectives.[8] (Tr. at 2568, 2574, 2711.) Finally, Nowicki's DNA was found on one of the victim's genitalia. (Tr. at 2399-2400, 2404-05, 2454-2457.) In light of the overwhelming evidence guilt petitioner cannot prove that, but for counsel's failure to object to the violations of New York law, the results of the trial would have differed. See Strouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991)(petitioner cannot prove prejudice when there is overwhelming evidence of guilt); United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990)(same); Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001).

ii. Repetition Of Victims' Statements Through Numerous Witnesses

At trial, the prosecution and defense introduced the victims' accounts of the assault through numerous witnesses. (Pet. at 36.) Nowicki contends that these prior

---

[8] Nowicki told authorities: (1) "It is absolutely possible that I touched [the victims] in an inappropriate way, by this I'm referring to touching them in their genital area."; (2) "[I] fucked up that kid's whole life... by what I did to him."; and (3)"[I]t looks like things are piling up on me, it really looks like I did this thing... I did this."

consistent statements bolstered the victims' testimony in violation of New York law. (Id. at 42.) As such, counsel was ineffective for eliciting and failing to object to testimony of the victims' prior consistent statements. (Id.) It is well settled that "actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance of counsel." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005). Thus, "in case after case, [the Second Circuit has] declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised" Loliscio v. Goord, 263 F.3d 178, 195 (2d Cir. 2001).

Here, the record reveals that the decisions to elicit and not to object to testimony that recounted the victims' description of the attacks was trial strategy. Counsel's strategy throughout trial was designed to advance Nowicki's innocence by arguing that he was framed by the victims' father. (Tr. at 3224-25.) According to defense counsel, the challenged testimony revealed that the victims' had provided a number of individuals with differing accounts of the attack. (Tr. at 2133, 3187, 3193-94.) Nowicki's attorney then highlighted these inconsistencies to strengthen the defense's theory that the assaults were fabrications doctored by the boys' father. (See, e.g., Tr. at 3225.) As counsel's actions were grounded in strategy that advanced the defense's theory of the case they cannot serve as the basis for a Strickland claim. See Loliscio, 263 F.3d at 195 (counsel not ineffective "notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised"); Singleton v. Davis, No. 07-1024-pr, 2009 WL 230135, at *2 (2d Cir. Feb. 2, 2009) (counsel not ineffective for failing to object to inadmissible cumulative evidence where decision was based on strategy of highlighting

inconsistencies in victim's story). Accordingly, the Second Department's determination as to this prong of petitioner's ineffective assistance claim was not unreasonable.

### iii. Failure To Object To Party Guests' Opinion Testimony

At trial, the prosecution called several witnesses who were guests at the victims' parent's New Year's Eve party. (Aff. in Opp'n at 16.) Nowicki claims that his counsel ineffectively failed to object to certain aspects of the party guests' testimony. (Pet. at 45.) This claim is predicated on the trial judge's decision to narrowly circumscribe the scope of the guests' testimony. (Id. at 44.) Specifically, the guests were prohibited from opining on the appropriateness of Nowicki's conduct during the New Year's Eve party. (See Pet. at 44; Tr. at 761-65, 772.) On direct examination, the prosecution was also barred from eliciting testimony that the guests wanted to or actually called the victims' parents after the party to report petitioner's conduct. (See Pet. at 44; Tr. at 768-72.)

During direct examination, one of the party guests, Ms. Gifford, testified that she observed the petitioner hug, touch, and place one of the victims in a headlock. (See Pet. at 44; Tr. at 921-23.) Ms. Gifford also stated that she discussed these observations with another guest and that the two agreed to contact the victims' parents the next day. (See Pet. at 44; Tr. at 925, 929.) Another witness, Ms. Riefenhauser, stated that petitioner was constantly engaged in "horseplay" with one of the victims prior to the assault. (See Pet. at 45; Tr. at 958.) Ms. Riefenhauser also testified that she reported her observations to another guest during the party and to the victims' father the next day. (See Pet. at 45; Tr. at 961, 965.) Finally, the victims' father testified that he received a phone call from a guest, the day after the party, reporting the petitioner's conduct.

(See Pet. at 45.) Nowicki asserts that his counsel should have objected to all of this testimony because it contravened the judge's instructions. (See Pet. at 45.)

Petitioner's claim fails, in part, because a significant portion of the challenged testimony was permissible under the court's pre-trial ruling. Pursuant to the trial judge's decision, the party guests were permitted to testify about their observations of petitioner's conduct. (Tr. at 760-62, 764-65.) Therefore, Ms. Gifford and Ms. Riefenhauser's testimony about petitioner's physical interactions with the victims was admissible. Similarly, the witnesses were not prohibited from testifying that they reported their observations of Nowicki's conduct to other guests on the night of the party. (See Tr. at 756-73.) Accordingly, Ms. Gifford and Ms. Riefenhauser's testimony that they discussed their physical observations with other guests was permissible. The court's ruling was also limited to the party guests' testimony. (See id.) Thus, the victims' father recounting a phone conversation with a party guest was outside the scope of the court's ruling.

Petitioner has, nevertheless, identified testimony that was objectionable under the court's pre-trial ruling. Specifically, Ms. Gifford's statements that she planned to call the victims' family the day after the party to report her observations was impermissible. (See Tr. at 770) Ms. Riefenhauser's testimony that she actually called the victims' family the morning after the party was also prohibited. (See Tr. at 769-70.)

Counsel's decision to object to evidence falls squarely within the ambit of trial strategy. See Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997); Neil v. Walsh, No. 07 Civ. 6685, 2009 WL 382637, at *21 (S.D.N.Y. Feb. 17, 2009). Accordingly, a strategically sound decision to withhold an objection will not "rise to the level of deficient

14

performance under <u>Strickland</u>." <u>Eze v. Senkowski</u>, 321 F.3d 110, 136 (2d Cir. 2003)(acts or omissions based on sound strategy will not support ineffective assistance of counsel claims).

In this case, counsel's decision not to object was grounded in sound trial strategy. The record reveals that defense counsel wanted to explore whether the party guests immediately notified the victims' parents about petitioner's conduct. (<u>See</u> Tr. at 769-771.) The trial judge held that if the defense pursued this line of questioning it would open the door for the prosecution, on re-direct, to delve into the previously excluded phone call testimony. (<u>See</u> Tr. at 771.) Given the judge's ruling, counsel could have reasonably elected not to object to the prosecutor's phone conversation questions because he planned on opening the door to this testimony on cross-examination.

Moreover, the party guests' testimony painted a disturbing picture of petitioner's conduct leading up to the assault. As part of his strategy for dissipating the harm from this testimony, counsel sought to highlight the fact that none of the guests immediately notified the victims' parents of petitioner's behavior. (Tr. at 943-45, 968). Counsel reasoned that if Nowicki's conduct at the party was as sinister as described, one of the guests would have immediately alerted the victims' parents. <u>See</u> (Tr. at 769)(counsel explaining his strategy to the court); (Tr. at 3152)(during summation counsel highlights fact that at party guests never expressed their concerns about petitioner's behavior to victims' family). The responses to the prosecutor's challenged questions revealed that the guests either did not alert the victims' parents to Nowicki's behavior or waited until the next day to do so. In effect, the prohibited phone call testimony advanced counsel's argument that petitioner's behavior at the party was not so nefarious as to warrant

immediate notification of the parents. Therefore, it was reasonable for counsel not to object to questions that advanced his strategy for responding to the party guest's powerful testimony. Given the sound strategic justifications for the defense's failure to object, it was not unreasonable for the state courts to conclude that counsel was effective.

### D. DNA Evidence

Finally, petitioner contends that his attorney should have objected to the admission of the DNA evidence due to the prosecution's failure to lay a foundation that the sample was not cross-contaminated. Nowicki also argues that his counsel ineffectively challenged the prosecution expert witnesses' characterization of the DNA evidence. I will consider these claims in turn.

### I. Failure To Object To Admission Of DNA Evidence

During the investigation of this case, a DNA swab was taken from one of the victim's genitalia. (Tr. at 2043.) This swab was shipped to a forensic laboratory in the same container as a sample of Nowicki's DNA. (Tr. at 2309-12; Pet. at 47-8.) Petitioner asserts that the prosecution failed to lay a "foundation providing the least amount of confidence that the [the swab from the victim] had not been contaminated with the sample of Mr. Nowicki's DNA that had been packaged along with it." (Id. at 53.) Based on this uncertainty, petitioner argues that his counsel should have objected to the admission of the DNA evidence. (Id.)

Nowicki's claim that the prosecution failed to establish a "reasonable degree of certainty that the evidence swab had not been cross-contaminated" is belied by the record. (Id. at 52.) The scientist who received the package with DNA evidence testified

16

that the swab from the victim was located in stapled wax paper that was sealed in a ziplock plastic bag. (Tr. at 2443.) This witness also testified that the DNA evidence exhibited no signs of contamination or tampering. (Tr. at 2447-48.) Given this testimony, counsel's failure to object to the DNA evidence based on inadequate proof of the absence of contamination was not ineffective assistance. See United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir. 1987)("[f]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation."); Arena, 180 F.3d at 396.

Furthermore, in New York questions of contamination generally go to the weight rather than the admissibility of DNA evidence. See People v. Ortiz, 914 N.Y.S.2d 281, 282 (N.Y. App. Div. 2011); People v. Ko, 757 N.Y.S.2d 561, 563 (N.Y. App. Div. 2003), remanded on other grounds 542 U.S. 901. Since issues of contamination are committed to the province of the jury, an objection to the admission of the DNA would have been baseless. The defense's failure to raise a frivolous objection was not ineffective assistance of counsel. Nersesian, 824 F.2d at 1322. Based on the evidence adduced at trial and New York law, the state courts did not unreasonably reject this portion of petitioner's ineffective assistance of counsel claim.

ii. Failure To Object To Expert Witnesses' Characterization Of DNA Evidence

At trial the scientists who analyzed the DNA swab that was taken from the victim testified that the sample was "pristine, uncompromised, and uncontaminated." (Pet. at 58.) Nowicki argues that the reports produced by these scientists revealed that the DNA sample was contaminated. (Id. at 54-6.) In light of this evidence, petitioner contends that his counsel was ineffective for not attacking the scientists' characterization of the DNA

17

evidence. (Id. at 58.) In essence Nowicki now challenges the effectiveness of his attorney's cross-examination of the DNA experts.

When reviewing Strickland claims based on an attorney's allegedly deficient cross-examination, federal courts are deferential to trial counsel's calculations as to the proper scope of questioning. The Second Circuit has explained that "decisions whether to engage in cross-examination, and if so to what extent and in what manner, are [ ] strategic in nature." United States v Eisen, 974 F.2d 246, 265 (2d Cir. 1992). Accordingly, the conduct of cross-examination will not support an ineffective assistance of counsel claim unless there was no reasonable strategic or tactical justification for the course taken. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998); Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002)(citing Nersesian, 824 F.2d at 1321).

As an initial matter, Nowicki's assertion of contamination is exclusively based on his lay interpretation of three DNA reports produced by the prosecution's experts. (Pet. at 54.) On their face, these reports are devoid of clear evidence of contamination.(See App. at 121-22, 397)(describing alleged anomalies as "inconclusive band in mixture, possible, stutter or very weak allelic band.") Moreover, petitioner's lay interpretations of the reports are directly contradicted by the testimony of DNA experts. (Tr. at 2400-01, 2473.) Thus, the factual predicate underlying Nowicki's claim is suspect at best.

After consulting a DNA expert who presumably reviewed the same reports that form the basis of petitioner's argument, defense counsel could have reasonably elected not to raise the contamination issue on cross-examination. (App. at 230.) See Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005)(failure to consult an expert in sex abuse cases indicative of ineffective assistance of counsel). The strategic and tactical

justifications underlying counsel's decision are manifold. <u>Luciano</u>, 158 F.3d at 660(conduct of cross-examination is only ineffective assistance of counsel if there is no reasonable strategic or tactical explanation for attorney's actions). Nowicki's attorney could have simply elected not to pursue a line of questioning that was almost entirely unsupported by fact. <u>See</u> <u>Arkin v. Bennett</u>, 282 F. Supp. 2d 24, 38 (S.D.N.Y. 2003)("[T]he Court will not fault trial counsel for failing to pursue specific avenues of cross-examination, especially when those avenues are very weak."). <u>See also</u> <u>Arena</u>, 180 F.3d at 396 (failure to raise meritless argument is not ineffective assistance).

Similarly, based on the weak evidence of contamination, counsel could have feared that probing the issue would only elicit testimony that bolstered the credibility of the DNA tests. <u>See</u> <u>Elgabrowny v. United States</u>, No. S5 93 CR. 181, 2003 WL 22416167, at *7 (S.D.N.Y. Oct. 22, 2003)(legitimate trial strategy to not pursue an issue that could open the door to damaging evidence); <u>Mathurin v. United States</u>, Nos. 01 Civ. 1374, 2007 WL 2589450, at *13 (S.D.N.Y. Sept. 5, 2007)(counsel not ineffective for refusing to pursue a line of questioning on cross-examination that would have strengthened government's case). Additionally, given the technical nature of the contamination issue, defense counsel may have elected to avoid shifting the jury's attention to esoteric matters of forensic science or turning the case into a battle of experts. <u>See</u> <u>Harrington</u>, 131 S. Ct. at 790.

Instead of broaching the issue of contamination and its associated risks, counsel focused his cross-examination on advancing the defense's theory that the petitioner was framed. In accordance with this theory, Nowicki's attorney concentrated on the fact that petitioner's DNA could have been planted on the victim. (Tr. at 2410-18, 2464-65,

19

2469-70.) This line of questioning produced valuable testimony including admissions that it was impossible to determine if the petitioner's DNA had been planted on the victim. (See id.) Since, the cross-examination of the DNA experts was grounded in sound trial strategy that actually advanced the defense's theory of the case, counsel's performance was not ineffective. See Mathurin, 2007 WL 2589450, at *14 (counsel's cross-examination was not ineffective where it advanced the defense's theory of the case). Accordingly, the state court's did not unreasonably conclude that counsel's cross-examination of the DNA experts was not ineffective.

## IV. CONCLUSION

For the foregoing reasons, I conclude that petitioner has failed to meet the heavy burden necessary to overcome the state courts' denials of his ineffective assistance of counsel claims. Accordingly, I respectfully recommend that the instant petition for a writ of habeas corpus should be dismissed.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules governing § 2254 proceedings, the parties shall have fourteen (14) days from the receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Rule 12 of the Rules governing § 2254 proceedings; Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of

New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to The Honorable Kenneth M. Karas and not to the undersigned.


Dated:          March 30 , 2011
                White Plains, New York

                               Respectfully submitted,

                               _____
                               GEORGE A. YANTHIS
                               UNITED STATES MAGISTRATE JUDGE